UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| SCOROCS, L.L.C., a Missouri limited liability company, f/k/a Microfinance Risk Management, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIONS FOR POVERTY ACTION, a Connecticut not-for-profit corporation, <br> <u>serve</u>: **Corporate Officer** <br> **101 Whitney Ave.** <br> **New Haven, CT 06510-1256** <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Jury Trial <br> ) |

## COMPLAINT

Plaintiff Scorocs, L.L.C. ("Scorocs"), by and through counsel, for its Complaint against the defendant, Innovations for Poverty Action ("IPA"), states and alleges as follows:

### Introduction

1.   This case brings claims against the defendant based on its willful infringements of the plaintiff's federally registered trademark, as well as unfair competition and false designation of origin pursuant to 15 U.S.C. §1125(a), among other sections of the Lanham Act and also state law.

2.   Plaintiff owns the registered trademark for SIMPLE POVERTY SCORECARD®.

3.   Defendant has actual knowledge of its infringing uses because the two companies have had prior communications about them.

4. Accordingly, this action is brought for damages pursuant to federal law and state law, and for an Order of the Court that will effectively enjoin the defendant from all further unauthorized uses, rebranding, references to, and imitations of plaintiff's mark.

### The Parties, Jurisdiction, and Venue

5. As pleaded more specifically below, plaintiff brings this suit pursuant to the Lanham Act, 15 U.S.C. §1111, *et seq*. As such, the Court has federal question subject matter jurisdiction over these claims, pursuant to 28 U.S.C. §1331. The Court also has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §1338 and 15 U.S.C. §1121(a).

6. Independently, the Court also has diversity subject matter jurisdiction of the claims, pursuant to 28 U.S.C. §1332, based on the citizenships of the respective parties and because the amount in controversy is in excess of $75,000, all as pleaded in greater detail below.

7. Plaintiff Scorocs is a Missouri limited liability company. It is registered with the Missouri Secretary of State's Office and is active and in good standing. Plaintiff's principal office is in Kansas City, Jackson County, Missouri. Plaintiff Scorocs was previously known as Microfinance Risk Management, L.L.C. ("MRM"), until it recently changed its name to Scorocs, L.L.C.

8. Defendant IPA is a Connecticut not-for-profit corporation with its principal place of business located in New Haven, Connecticut. It is not registered with the Missouri Secretary of State's Office, however this defendant markets its services and solicits donations from benefactors from around the world, on information and belief including Missouri.

9. The Court has personal jurisdiction over the defendant through their submission to jurisdiction in Missouri, pursuant to R.S.Mo. 506.500.1, subsections (1), (2), and/or (3), by

virtue of the defendant having transacted business in Missouri including forming contractual agreements with the plaintiff, and/or also advertised their services on the internet, including in Missouri and by Missouri residents, and/or by committing tortious acts within Missouri and/or whose effects are felt within Missouri including the infringing acts set forth in this Complaint.[1] Service of process may therefore be attained by delivering a summons or request for waiver of summons and a copy of this Complaint to the defendant's registered agent in a state in which they are located, pursuant to R.S.Mo. 506.510.1, including to the agent shown above in the case caption of this pleading, and/or otherwise as service may be authorized by law.

10. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) or (3), because the plaintiff resides in this District, the defendant is subject to process in this District, and many of the events, torts, and damages at issue occurred in this District, as set forth in greater detail below.

11. The case is properly filed and heard in Kansas City pursuant to Local Rule 3.2 (a)(1)(A), because this plaintiff's principal office and therefore residence is located in Jackson County.

**Plaintiff's Business and Registered Trademarks**

12. Plaintiff Scorocs is a company owned by Mark Schreiner, Ph.D. Dr. Schreiner and his company work in the field of studying poverty conditions and economic development around the world.

---

[1] Trademark infringement pursuant to the Lanham Act is a tort and qualifies as a tortious act subjecting the defendant to long-arm jurisdiction. *See, e.g., Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991).

3

13. In 2004, Dr. Schreiner started the company as MRM. In summary, the company designs socio-economic questionnaires and analyzes data to reduce poverty. It designs questionnaires and related tools for data collection and analysis, for the assessment of households' socio-economic levels, and provides economic consultation and analysis in the fields of economic development and poverty reduction.

14. MRM referred to the deliverable that resulted from its review and analysis process as a "scorecard."

15. Starting in September 2006, MRM began using the phrase "Simple Poverty Scorecard" in commerce, as a trademark to refer to its product and services, and as a designation of source and origin, and to signal the quality control associated with the scorecards.

16. On December 22, 2014, MRM filed an application with the United States Patent and Trademark Office to register a trademark for SIMPLE POVERTY SCORECARD®.

17. On March 15, 2016, having received no opposition, the PTO registered the mark, #4,917,078. The registration notes that no claim is made to the exclusive use of the word "scorecard," apart from the mark as shown. A true and accurate copy of the registration is attached hereto as <u>Exhibit 1</u>.

18. As such, plaintiff Scorocs is the owner of that registered trademark.

19. At times herein, for brevity plaintiff will reference the trademarked phrase as a SCORECARD or collectively as SCORECARDs.

20. The trademark has been not only registered but in use by plaintiff since that time. Plaintiff has been using the mark SIMPLE POVERTY SCORECARD® to brand and sell its services since 2006. Plaintiff uses the registered mark throughout its marketing and advertising, on-line presence, and to label its products and services.

21. According to the registration, plaintiff's registered trademark covers the following types of goods and services:

> Questionnaires on the risk that a household has income, expenditure, or consumption below a poverty line as indicated by the household's demographic characteristics, educational attainment, employment status, housing conditions, and asset ownership, in Class 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 and 50).

**Plaintiff's and Defendant's Business Relationship**

22. In 2016, defendant IPA purchased and/or received transfer of some of the assets of an entity known as Grameen Foundation. As a general matter, defendant IPA thereafter continued the work that Grameen Foundation had previously been doing with those assets.

23. Prior to the asset transfer, plaintiff (then named as MRM) had dealt with, contracted business with, and conducted business with Grameen Foundation. After the asset transfer, for the most part plaintiff's work with Grameen Foundation ended. Plaintiff formed a small number of new or continuation contracts with defendant IPA.

24. Historically, Grameen Foundation had worked with plaintiff (as MRM) for several years to publicize and support a re-branded version of MRM's trademarked SIMPLE POVERTY SCORECARD®. For particular SCORECARDs, contracts were entered between the parties which provided for co-ownership of copyright, covering the content of the particular SCORECARD. When a contract was entered for a particular SCORECARD, both Grameen Foundation and MRM could and did continue to provide access to the SCORECARD but did so under their different respective trademarks or brands.

25. Under the agreements, plaintiff continued providing access to the information under its trademarked SCORECARDs. Grameen Foundation was authorized to and did re-brand the particular agreed SCORECARDs under Grameen Foundation's trademarks, which included

5

Case 4:18-cv-00386-BCW   Document 1   Filed 05/21/18   Page 5 of 19

as a "Progress out of Poverty Index®" and/or a "PPI®". After the asset transfer, defendant IPA also began calling them a "Poverty Probability Index®". Collectively, these rebranded SCORECARDs used by defendant IPA will be referenced herein as "PPIs".

26. The contracts always involved Grameen Foundation paying a fixed contracted amount in return for the right to re-brand MRM's SCORECARD for the agreed country as a PPI. Grameen Foundation would then display and serve (from its own servers) these re-branded PPIs on its web pages, for the particular country. The SCORECARDs where rights were purchased were always agreed upon by the parties explicitly and in writing before delivery and payment.

27. Contracts were only entered for the rights for some of the many SCORECARDs produced by MRM. There were some SCORECARDs where Grameen Foundation never entered a contract and therefore never obtained rights to the SCORECARD from plaintiff.

28. Despite this history of Grameen Foundation/IPA contracting for the ability to rebrand and display MRM's work – which was legally necessary, given MRM's ownership of the work – plaintiff Scorocs has now discovered a number of instances in which IPA has wrongfully described or presented a Scorocs SCORECARD as being a PPI to which IPA holds the properly contracted rights described above.

29. Plaintiff has discovered other instances where defendant IPA is wrongfully using plaintiff's registered trademark on defendant's own web pages.

30. Through these and other wrongful activities (described below), defendant IPA has asserted authorship and/or ownership over Scorocs' work in instances where neither it nor Grameen Foundation has purchased those rights. The net result of these legal violations is a series of infringing acts to plaintiff Scorocs' rights.

6

# Infringement Issues

31. The following sections describe the instances of infringement by IPA, as evidenced by IPA's web pages and other documents. As pleaded in the Counts that follow this section, each instance is an actionable infringement of plaintiff's rights pursuant to, primarily, 15 U.S.C. §1125(a), as well as common law unfair competition/false designation of origin.

***(1)    Works where IPA is Infringing because IPA does not have branding rights but is describing or displaying the SCORECARD as an IPA-owned PPI anyway.***

32. There are 20 Scorocs SCORECARDs that defendant IPA has labeled or presented as an IPA-branded PPI, where plaintiff has not been paid for such use. The SCORECARDs in question are as follows, with the year of the national household consumption survey data from which they were constructed shown in parentheses:

1. Angola (2008/9)
2. Côte d'Ivoire (2008)
3. Cameroon (2007)
4. Ecuador (2005/6)
5. Ethiopia (2004)
6. Ethiopia (2010/11)
7. Fiji (2008/9)
8. Jordan (2006 and 2008)
9. Malawi (2010)
10. Mali (2001)
11. Myanmar (2009)
12. Mozambique (2008/9)
13. Namibia (2009/10)
14. Nicaragua (2009)
15. Niger (2007)
16. Pakistan (2005/6)
17. Palestine (2011)
18. Rwanda (2010/11)
19. Syria (2006/7)
20. Timor-Leste (2007)

33. For these 20 SCORECARDs, IPA confusingly creates the false impression that the origin of the work is IPA, when in fact it is plaintiff's work. This is a violation of the Lanham Act, 15 U.S.C. §1125(a), relating to false designations of origin and unfair competition. It also violates state common law preventing unfair competition, including in Missouri and elsewhere.

34. The infringements for these non-purchased SCORECARDs occur in a variety of forms throughout IPA's online presence. For example,

   a. IPA lists or has listed countries it says have PPIs, but those lists include/have included the SCORECARDs above for which IPA never acquired the rights;
   b. IPA shows a map of the world with pins on implied PPI countries, but the pins include some countries where IPA lacks the rights to the SCORECARD;
   c. IPA displays a video about the PPI for Ethiopia on its "PPI by Country" landing page, but there is no PPI for Ethiopia;
   d. IPA's list of "PPI Users" includes users who operate in countries that have a SCORECARD but not a PPI;
   e. IPA pages include metatags or other hidden data that cause search engines to present the pages with titles that include "PPI" for pages that describe and link to "SCORECARDs" (to which IPA does not have the rights), even when PPI is not used in the phrase being searched. IPA understands that this practice is an infringement of Scorocs' mark, because IPA's own "Terms of Use" for its website specifically say, "You may not use metatags or any other 'hidden text' that incorporates Our Trademarks, marks confusingly similar to Our Trademarks, or our name without our express and prior written consent."

35. For contracted instances where Grameen Foundation properly purchased the rebranding rights from MRM, the most recent purchase price was $15,000 per SCORECARD. That would be a reasonable measure of damage for plaintiff Scorocs' own loss in each instance where defendant IPA infringed in relation to a given SCORECARD.

### (2) Works where IPA is Infringing because IPA presents or describes as a PPI a Scorocs document in some language other than English, for which IPA does not have re-branding rights.

36. Plaintiff has also created as derivative works a number of translations of SCORECARD documents. For a small number of countries, Grameen Foundation or IPA had paid MRM per translation, providing IPA with co-ownership of copyright to the translated versions.

37. Grameen Foundation/IPA have not purchased the rights to Scorocs' translations for a number of SCORECARDs. Plaintiff has found 16 instances where IPA has presented a translation on an IPA web page in a way that confusingly creates the impression they are PPIs, when in fact IPA does not have rights in the translations. The translations in question are:

1. Angola (Portuguese)
2. Benin (French)
3. Burkina Faso (French)
4. Brazil (Portuguese)
5. Cameroon (French)
6. Côte d'Ivoire (French)
7. Colombia (Spanish)
8. Dominican Rep. (Spanish)
9. El Salvador (Spanish)
10. Honduras (Spanish)
11. Morocco (French)
12. Madagascar (French)
13. Niger (French)
14. Peru (Spanish)
15. Paraguay (Spanish)
16. Rwanda (French)

38. Presentation of the translations as PPIs belonging to IPA violates the provisions of 15 U.S.C. §1125(a) preventing false designations of origin and unfair competition, as well as state common law preventing unfair competition.

39. For contracted instances where Grameen Foundation properly purchased the rebranding rights from MRM for translations, the most recent purchase price was $2,000 per SCORECARD. That would be a reasonable measure of damage for plaintiff Scorocs' own loss in each instance where defendant IPA infringed in relation to a given SCORECARD translation.

**(3)** *Works where IPA is Infringing because IPA's URL to the country's webpage incorporates the trademarked phrase "simple-poverty-scorecard" without authority.*

40. There are eight web pages where IPA has a URL that includes the registered trademark SIMPLE-POVERTY-SCORECARD®. The eight web pages in question relate to the following countries:

1. Angola (2008/9)
2. Côte d'Ivoire (2008)
3. Cameroon (2007)
4. Myanmar (2009)
5. Mozambique (2008/9)
6. Namibia (2009/10)
7. Niger (2007)
8. Nicaragua (2009)

41. These instances are direct trademark infringements by IPA, pursuant to 15 U.S.C. §1114(1), as well as violations of 15 U.S.C. §1125(a) and state common law against unfair competition/false designation of origin.

**(4)** *Works where IPA has Infringed because, without authority, an IPA web page used the phrase "A simple poverty measurement scorecard," which is confusingly similar to and therefore infringing upon plaintiff's registered trademark SIMPLE POVERTY SCORECARD®.*

42. On 59 country web pages where defendant IPA displays a PPI, regardless whether IPA purchased the rights from plaintiff to rebrand the country as a PPI or not, in the title of the page IPA has used the phrase "A simple poverty measurement scorecard."

10

43. This phrase is clearly an imitation of Scorocs' registered trademark, SIMPLE POVERTY SCORECARD®.

44. Neither defendant IPA nor Grameen Foundation ever purchased the right to use or imitate plaintiff's registered trademark. Accordingly, defendant IPA's use of the confusingly similar phrase directly infringes plaintiff's trademark and is actionable pursuant to 15 U.S.C. §1114(1). As with the other claims above, the acts also violate 15 U.S.C. §1125(a) and state common law prohibiting unfair competition/false designation of origin.

### Actual Confusion Exists in the Marketplace and Among Consumers

45. In addition to the mere likelihood of confusion being created by defendant's infringing activities, there have been many instances of actual confusion created.

46. Ethiopians in a video IPA produced about Ethiopia called the SCORECARD for Ethiopia a PPI.

47. Dr. Schreiner has received e-mails where people reference non-PPI SCORECARDs as PPIs.

48. For many years, users in Pakistan had a "PPI Learning Network", even though there was no PPI contracted for Pakistan.

49. There is a "PPI User Collaborative" in a group of African countries that include Mali, and they incorrectly refer to the SCORECARD for Mali as a PPI.

50. South Africa's SEF has publicized that it is a "Certified PPI User," even though it uses a custom non-PPI SCORECARD; the custom SCORECARD used by the SEF is not the original SCORECARD for South Africa that had been properly purchased and re-branded as a PPI.

51. Dr. Schreiner applied for a grant in 2017, where the grant committee in question mistakenly thought the PPI and the SCORECARD were the same thing and took his application to defendant IPA for their thoughts.

52. Grameen Foundation India, which is a separate and distinct entity from Grameen Foundation, references non-PPI SCORECARDS as PPIs in several instances.

53. The organizations CERISE, CISCO, and SurveyCTO all have presentations, documents, and/or web pages that parrot defendant IPA's incorrect claim that there are 60 countries with PPIs.

54. A commenter in an IPA discussion forum refers to there being a PPI for Myanmar, but there is no PPI for Myanmar, only a SCORECARD.

55. A software engineer interested in developing software to compute poverty scores and likelihoods on www.github.com, has posted on that website defendant IPA's incorrect and infringing list claiming there are 60 alleged PPI countries.

56. Brown, Ravaillon, and van der Walle is an academic paper. It refers to there being PPIs for countries that do not in fact have them. On information and belief, there are other academic papers making similarly incorrect claims based on defendant IPA's wrongful use and appropriation of plaintiff's works.

57. "Case studies" have been done by Grameen Foundation and/or defendant IPA about the use of PPIs, including some about users of a non-PPI SCORECARD. On information and belief, these will include statements from the user about the "PPI."

58. Collectively and cumulatively, defendant IPA's wrongful uses of plaintiff's SCORECARDS to which it has no authority, and the confusion being created by its wrongfully

12

Case 4:18-cv-00386-BCW    Document 1    Filed 05/21/18    Page 12 of 19

calling plaintiff's work "PPIs", has thoroughly saturated with confusion the communities of users who rely on plaintiff's work.

## COUNT I – Federal Unfair Competition/ <br> False Designation of Origin (15 U.S.C. §1125(a))

59. Plaintiff incorporates by reference all previously-pleaded paragraphs, facts and allegations, above, as though fully set forth herein.

60. Plaintiff creates, produces, and sells rights to poverty measurement tools, as set forth in previous paragraphs.

61. Plaintiff commenced use of SIMPLE POVERTY SCORECARD® as a trade name and trademark at least as early as 2006 and has been making continuous use of it in interstate commerce as a trade name through to the present date, for his products and services as described in previous paragraphs.

62. On March 15, 2016, plaintiff received federal registration of the mark, as set forth above, and thereafter continued its usage.

63. By contrast, defendant has no rights in that trademark, including even in instances where it or its predecessor had purchased rebranding rights for particular SCORECARDs.

64. Defendant has nevertheless confusingly used plaintiff's works and used plaintiff's trademark in many instances where it lacks the rights to do so. *See* paragraphs 31-44, above.

65. Defendant's uses of plaintiff's marks and property are closely related to, compete with, and substantially similar to, if not the same as, plaintiff's own uses of its marks and property, and are additionally confusing in that they are similar to the defendant's own services and products that the defendant markets and fundraises for itself with under its own name and tradenames.

66. The defendant's wrongful and confusing uses of plaintiff's marks and branding occurs throughout the United States and even the world, because it is done predominantly online. *See* paragraphs 31-44, above.

67. The relevant markets of the products and services of both plaintiff and defendant are the same, and the products and services are often in direct competition with one another.

68. The earliest date of first use of the defendant' use, marketing, and branding of its products with its infringing mark is subsequent to the date of adoption and first use of plaintiff's trade name, and is derivative from plaintiff's own development of its SCORECARDs and therefore of plaintiff's use and branding of plaintiff's own services. Accordingly, any and all rights of the plaintiff in its trade name and trademark are superior to any and all rights which may be claimed by the defendant in their trade name and branding.

69. A likelihood of confusion exists between the concurrent uses of plaintiff's trademarks and branding by the defendant, within the relevant markets. Moreover, actual confusion has developed in the relevant markets. *See* paragraphs 45-58, above.

70. Therefore defendant is engaging in unfair competition and false designation of origin arising from its use of the infringing mark in the sale and marketing of related and/or competing goods in the United States, against and to the ongoing detriment of plaintiff. Defendant' conduct violates 15 U.S.C. §1125(a).

71. As a direct and proximate result of defendant' unfair competition, plaintiff has been caused damages in excess of $75,000.

72. Pursuant to 15 U.S.C. §1117(a), plaintiff is entitled to recover from defendant the amount of plaintiff's own damages, plus defendant's profits from its infringing uses.

73. Defendant's acts pf unfair competition/false designation of origin are willful, knowing, and deliberate, and it had actual knowledge of plaintiff's registered mark, plaintiff's previous requests not to use the mark, and of its own limited rights under the agreements with plaintiff. Accordingly, plaintiff is entitled to recover treble damages from defendant, pursuant to 15 U.S.C. §1117(a).

74. Plaintiff is also entitled to recover its attorney's fees incurred pursuing this action, and their costs and expenses herein, pursuant to 15 U.S.C. §1117(a).

75. Pursuant to 15 U.S.C. §1116(a), plaintiff also requests the Court to enter an Order enjoining the defendant from any further taking and rebranding of plaintiff's SCORECARD products and/or use of plaintiff's trademark in any confusingly similar ways and in any unauthorized ways outside the parties' prior agreements.

WHEREFORE, plaintiff prays the Court to enter judgment in its favor and against the defendant on Count I in an amount in excess of $75,000 as pleaded above and as will be specifically calculated and proven at trial, to award plaintiff its costs and attorney's fees in this action, to order all activities of unfair competition/false designation of origin to cease, and to enter such additional and further relief as is warranted by the evidence.

## COUNT II – Trademark Infringement (15 U.S.C. §1114(1))

76. Plaintiff incorporates by reference all previously-pleaded paragraphs, facts and allegations, above, as though fully set forth herein.

77. Plaintiff is the owner and holder of a federally registered trademark, as described above.

78. As such, plaintiff has the exclusive right to use the mark in connection with products and services throughout the United States.

79. Plaintiff actually uses the registered mark in commerce to identify its products and services and has done so since 2006.

80. Notwithstanding plaintiff's absolute and exclusive right to use the mark, defendant has variously used plaintiff's mark, and/or used a mark that is confusingly similar to plaintiff's mark by incorporating the same words as the plaintiff's mark. Defendant's uses have been a colorable and wrongful imitation of plaintiff's mark, to market defendant and its own products and services. *See* paragraphs 40-44, above. Defendant's wrongful use of the mark is without the consent of plaintiff.

81. Defendant is using the mark in commerce to advertise, offer for sale, sell, and distribute defendant's products and services, which are similar to plaintiff's own goods and services, and to aid in its fundraising and therefore in its profiting from infringing the uses.

82. Defendant's uses are confusingly similar to plaintiff's registered trademark.

83. Defendant's uses are likely to create and have created consumer confusion between defendant's mark and plaintiff's federally registered mark. *See* paragraphs 45-58, above.

84. Defendant's activities in using the confusingly similar mark is a direct infringement of plaintiff's registered trademark, pursuant to 15 U.S.C. §1114(1)(a)).

85. As a direct and proximate result of defendant' infringing use, plaintiff has been caused damages in excess of $75,000.

86. Pursuant to 15 U.S.C. §1117(a), plaintiff is entitled to recover from defendant the amount of plaintiff's own damages, plus defendant's profits from its infringing uses.

87. Defendant's use of the infringing mark is willful, knowing, and deliberate, and it had actual knowledge of plaintiff's registered mark and of plaintiff's previous requests not to use the mark. Accordingly, plaintiff is entitled to recover treble damages from defendant, pursuant to 15 U.S.C. §1117(a).

88. Plaintiff is also entitled to recover its attorney's fees incurred pursuing this action, and their costs and expenses herein, pursuant to 15 U.S.C. §1117(a).

89. Pursuant to 15 U.S.C. §1116(a), plaintiff requests the Court to enter an Order enjoining the defendant from any further taking and rebranding of plaintiff's SCORECARD products and/or use of plaintiff's trademark in any confusingly similar ways and in any unauthorized ways outside the parties' prior agreements.

WHEREFORE, plaintiff prays the Court to enter judgment in its favor and against the defendant on Count II in an amount in excess of $75,000 as pleaded above and as will be specifically calculated and proven at trial, to award plaintiff its costs and attorney's fees in this action, to order all infringing activities to cease, and to enter such additional and further relief as is warranted by the evidence.

### COUNT III – Unfair Competition (State Common Law)

90. Plaintiff incorporates by reference all previously-pleaded paragraphs, facts and allegations, above, as though fully set forth herein.

91. This Court has supplemental jurisdiction over the subject matter of this state law claim, pursuant to 28 U.S.C. §1367.

92. Plaintiff has built a substantial commercial advantage through consistent use and promotion of its above-described trade name and trademark, in Missouri and elsewhere in the United States.

93. The unlawful activities of the defendant undermine plaintiff's business reputation by exploiting, without consideration or authorization, the goodwill associated with plaintiff's use of its trade name and trademark in relation to the defendant' marketing, advertising, fundraising, branding and promoting products and services that are the same as, related to, or compete with products and services marketed by plaintiff, including in Missouri and which are directed to potential purchasers or donors in Missouri.

94. The unlawful activities of defendant in the State of Missouri are calculated, and are likely, to cause confusion, mistake or deception among potential purchasers or donors, and actual purchasers or donors, as to the affiliation, connection, association or source of plaintiff's products and services that are the same, similar, related or competing goods as those offered for sale, and that are sold, to purchasers or donors of defendant's services in Missouri by defendant.

95. The unlawful activities of defendant in the State of Missouri constitute unfair competition under the common law of the State of Missouri.

96. The above-referenced activities of the defendant in the State of Missouri further constitute acts of unfair competition and uses that are confusingly similar to the trade name and trademark of plaintiff, under the common law of the State of Missouri.

97. As a direct result of defendant' unlawful and infringing activities, plaintiff has been damaged in an amount in excess of $75,000, as itemized previously above.

WHEREFORE, plaintiff prays the Court to enter judgment in its favor and against the defendant on Count III in an amount in excess of $75,000 as pleaded above and as will be

specifically calculated and proven at trial, to award plaintiff its costs and attorney's fees in this action, to order all infringing activities of the defendant to cease, and to enter such additional and further relief as is warranted by the evidence.

Respectfully submitted,

 /s/ Andrew M. DeMarea
Andrew M. DeMarea               MO #45217
KENNER NYGAARD DeMAREA KENDALL LLC
117 W. 20th St., Suite 201
Kansas City, MO 64108
Telephone: (816) 531-3100
Facsimile:  (816) 531-3600
andy@kndklaw.com

ATTORNEY FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues in the case so triable.

Respectfully submitted,

 /s/ Andrew M. DeMarea
Andrew M. DeMarea               MO #45217
KENNER NYGAARD DeMAREA KENDALL LLC
117 W. 20th St., Suite 201
Kansas City, MO 64108
Telephone: (816) 531-3100
Facsimile:  (816) 531-3600
andy@kndklaw.com

ATTORNEY FOR PLAINTIFF